UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MOHAWK RE-BAR SERVICES INC.** | ) | **Case No. 1:14 CV 137** |
| 15110 Foltz Parkway, Suite 106 | ) | |
| Strongsville, OH  44149, | ) | **Judge Lesley Wells** |
| | ) | |
| Plaintiff, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| **INTERNATIONAL ASSOCIATION OF** | ) | |
| **BRIDGE, STRUCTURAL,** | ) | |
| **ORNAMENTAL, REINFORCING IRON** | ) | |
| **WORKERS** | ) | |
| **Local Union No. 17** | ) | |
| 1544 East 23rd Street | ) | |
| Cleveland, OH  44114, | ) | |
| | ) | |
| **INTERNATIONAL ASSOCIATION OF** | ) | |
| **BRIDGE, STRUCTURAL,** | ) | |
| **ORNAMENTAL and REINFORCING** | ) | |
| **IRON WORKERS** | ) | |
| 1750 New York Avenue, NW | ) | |
| Suite 400 | ) | |
| Washington, DC  20006 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **HARRIS DAVIS REBAR LLC** | ) | |
| C/O Statutory Agent | ) | |
| CT Corporation System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, OH  44114 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Mohawk Re-Bar Services, Inc. (hereinafter, "Mohawk" or "Plaintiff") for its

First Amended Complaint against International Association of Bridge, Structural Ornamental,

Reinforcing Iron Workers Local Union No. 17, International Association of Bridge, Structural,

Ornamental and Reinforcing Iron Workers and Harris Davis Rebar LLC (collectively, "Defendants") states as follows:

## JURISDICTION

1.     This is a civil action brought under Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, which authorizes jurisdiction in this Court for violations of collective bargaining agreements, and under the provisions of the Sherman Act, 15 U.S.C. § 2, which authorizes jurisdiction in this Court for anti-trust violations.  Further, jurisdiction is authorized under 28 U.S.C. § 1331, since these claims address issues arising under federal law.  Supplemental jurisdiction is also granted to this Court under 28 U.S.C. § 1367 for all related state law claims, including violation of the Valentine Act, Ohio Revised Code §§ 1331.01-1331.99.

2.     The activity described herein affects interstate commerce.

## VENUE

3.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)(1) because a substantial part of the acts and omissions giving rise to the claims in this action occurred in this judicial district.

## PARTIES AND OTHER ENTITIES

4.     Plaintiff is an Ohio corporation, having its principal office at 15110 Foltz Parkway, Strongsville, Ohio. Plaintiff is engaged in, *inter alia*, installation of reinforcing steel ("rebar") for concrete applications on construction projects throughout the Northeast Ohio area ("Covered Work").  Plaintiff is engaged in industries affecting commerce within the meaning of Section 301 of the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. § 185.

5.     Defendant International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local Union No. 17 ("Local 17") is a voluntary unincorporated labor

2

association having its principal offices at 1544 East 23rd Street, Cleveland, Ohio.  The union is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301 of LMRA, 29 U.S.C. § 185.

6.      Defendant International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (the "International") is a labor organization consisting of various regional and local unions throughout the United States representing employees in an industry affecting commerce within the meaning of Section 301, 29 U.S.C. § 185.  The International, pursuant to the provisions of the Constitution of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, as most recently revised and adopted in August, 2011 ("Constitution").  The Constitution imposes requirements and enforces terms and conditions upon regional and local unions, including Local 17, with which regional and local unions must comply as the collective bargaining representative of employees.

7.      A true and correct copy of the Constitution is attached hereto as **Exhibit A.**

8.      Defendant Harris Davis Rebar LLC ("Harris Davis") is a Delaware Limited Liability Company which maintains offices in and is authorized to do business in the State of Ohio.  Upon information and belief, Harris Davis is a related company to a number of other similarly named businesses, many of which are limited liability companies authorized to do business in various states throughout the country.  Harris Davis has been registered to do business in Ohio since about March 13, 2013.

9.      For purposes relevant to this Complaint, Harris Davis is an "employer."

10.     Non-Party Nucor Corporation ("Nucor") is a corporation organized and existing under the laws of the State of Delaware, which maintains its principal place of business in Charlotte, North Carolina.  Nucor is the dominant producer of raw steel in the United States and,

3

like Harris Davis, does business through a series of similarly named limited liability companies, joint ventures or similar business arrangements.   Several members of Nucor's executive management team hold positions in most or all Harris Davis entities.

## LABOR BACKGROUND

11.     Pursuant to a participation agreement dated June 23, 1981, Plaintiff is party to a collective bargaining agreement with Local 17, covering Plaintiff's employees engaged in the Covered Work ("Contract").

12.     A true and correct copy of the Contract is attached hereto as **Exhibit B**.

13.     Article X, Wage Rates, and Article XVII, Wages Designated for Pension, Insurance, Annuity and Assessment Check-Off, of the Contract require that employers, including Mohawk, pay an amount equal to $10.00 per employee hour worked into a Pension Fund administered pursuant to an Agreement and Declaration of Trust dated May 1, 1965 ("Pension Fund").  The Pension Fund is a multiemployer defined benefit plan as defined under Section 3(37) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37), and is subject to the withdrawal liability provisions set forth under Title IV of ERISA, 29 U.S.C. § 1301, *et. seq*.

14.     Mohawk has complied with its obligations to pay into the Pension Fund under Articles X and XVII during the term of the Contract.

15.     When employers fail to make contributions to the Pension Fund, including amounts under the Rehabilitation Plan for the Pension Fund, the deficiency in the amount needed to pay vested benefits to Pension Fund beneficiaries increases, and such deficits have historically required additional contributions from participating employers, including Mohawk.

16.     In addition, mass withdrawal from the Pension Fund would increase dramatically the amount of a participating employer's withdrawal liability to the Fund.

4

17.     Ceasing its obligation to pay into the Pension Fund while continuing to perform work covered by the Agreement, would trigger pension withdrawal liability under Section 4201 of ERISA, 29 U.S.C. § 1381, for Mohawk.

18.     Mohawk's current estimated withdrawal liability is approximately Six Million Dollars ($6,000,000).

19.     Article XXXV of the Contract, Favored Nations Clause, provides:

> If the union shall furnish Iron Workers to any Employer within the area of jurisdiction of this Agreement upon any more favorable wage rates and conditions than those contained therein, the Union agrees that such more favorable wage rates and conditions other than those contained in a Market Retention Agreement shall automatically be extended to the Employer [sic] Special Local Area or National Agreements negotiated to cover specific projects or classes of work shall be excluded from this provision.

20.     Pursuant to the Favored Nations Clause, Local 17 is precluded from supplying Iron Workers to any employer within the Contract's area of jurisdiction on terms more favorable than those provided to any other employer, including Plaintiff.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAVORED NATIONS CLAUSE**
**(Against Local 17 and the International)**

21.     Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 20 as if fully rewritten herein.

22.     On or about March, 2013, the International entered into a National Reinforcing Steel Agreement with Harris Davis ("Rebar Agreement") covering all Harris Davis steel and concrete reinforcing operations, including Covered Work.

23.     A true and correct copy of the form of such Rebar Agreement is attached hereto as **Exhibit C**.

24.     Paragraph 6 of the Rebar Agreement provides that fringe benefits funds, including pension contributions paid by Harris Davis on behalf of Iron Workers covered by the Rebar Agreement, may be paid into a retirement plan other than the Pension Fund, provided such retirement plan otherwise complies with ERISA, and is not subject to the withdrawal liability provisions of Title IV of ERISA.

25.     By relieving Harris Davis from making contributions to the Pension Fund, the International has effectively exempted Harris Davis from incurring pension withdrawal liability pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

26.     Article XIX of the Constitution provides that charges may be preferred by the International against any local union, including Local 17, for violation of any authorized order of the International, or doing any act likely to injure the International or hamper or interfere with the International or its interests.

27.     Local 17 would "injure the International … or hamper or interfere with the International" or "its interests" if Local 17 did not honor the Rebar Agreement between the International and Harris Davis.

28.     Article XIX of the Constitution provides that charges may be preferred by the International against any local union, including Local 17, for engaging in "conduct tending to interfere with the performance by the International … of its legal or contractual obligations."

29.     Local 17 would engage in "conduct tending to interfere with the performance by the International . . . of its legal or contractual obligations" in violation of the Constitution if it failed to honor the legal and contractual obligations contained in the Rebar Agreement between the International and Harris Davis.

6

30.     Pursuant to Article XIX of the Constitution, Local 17, is required to provide Iron Workers to Harris Davis under terms consistent with the Rebar Agreement including, but not limited to, permitting Harris Davis to only pay retirement contributions into a retirement fund that is not subject to the withdrawal liability provisions of Title IV of ERISA, thereby expressly precluding the payment of any retirement contributions into the Pension Fund for any Covered Work performed by Harris Davis within the jurisdiction of the Contract.

31.     On or about April 4, 2013, Mohawk timely submitted a proposal to perform the Covered Work for a parking structure project located in Cleveland, Ohio (the "Project"), in a total amount of One Million Nine Hundred Eighty-Four Thousand One Hundred and Fifty-Four Dollars ($1,984,154).

32.     Harris Davis submitted a proposal for the Project that was lower than Mohawk's proposal.

33.     On information and belief, the reason Harris Davis could and did submit a lower (and successful) bid was because of advantages conferred on it as a result of the Rebar Agreement.  Harris Davis did not have to contribute to the Pension Fund as provided for in the Rebar Agreement.

34.     Harris Davis was awarded a subcontract for the Covered Work, which it has since performed.

35.     Local 17 provided Iron Workers to Harris Davis to perform the Covered Work on the Project.

36.     Local 17 provided the Iron Workers to Harris Davis without requiring Harris Davis to pay into the Pension Fund.  Thus, in abiding by the Rebar Agreement, Local 17 provided Harris Davis with conditions more favorable than those provided to Mohawk and/or

other members of the Association in violation of the Favored Nations Clause as set forth in Article XXXV of the Contract.

37.     Harris Davis employed and paid Ironworkers for work performed on the Project, but made no contributions to the Pension Fund.

38.     Under the Agreement, in order to continue to performed Covered Work, and pursuant to the Pension Protection Act and ERISA, Mohawk and other employers must make Pension Fund contributions or incur delinquency assessments, interest charges and other obligations.

39.     Mohawk cannot continue to perform Covered Work and cease paying into the Pension Fund without triggering substantial, existing pension withdrawal liability under Section 4201 of ERISA in the current approximate amount of Six Million Dollars ($6,000,000). Mohawk is faced with the choice of ceasing to do business in Northeast Ohio or continuing its business without making the required Pension Fund contributions as Harris Davis has done and no doubt will continue to do.  Failure to make the required Pension Contributions, will expose Mohawk to the approximate $6.0 Million of withdrawal liability and will destroy Mohawk's ability to operate as a going concern.

40.     Harris Davis, having been relieved from paying into the Pension Fund by Local 17 and the International under the Rebar Agreement, avoids becoming a participating employer of the Pension Fund and thereby avoids accumulating on a going forward basis or from triggering, now and in the future, any pension withdrawal liability related to the Pension Fund.

41.     Even if Local 17 attempted to comply with the Favored Nations Clause by relieving Mohawk and the other members of the Association from making contributions to the

Pension Fund, such purported "favorable" term would trigger withdrawal liability devastating to Mohawk and other members.

42.     Consequently, being relieved of the obligation to pay into the Pension Fund is not a "wage rate or condition" as favorable to Mohawk as that given by Local 17 to Harris Davis. Thus, Local 17 cannot comply with the Favored Nations Clause by abiding by the Rebar Agreement between the International and Harris Davis.

43.     By avoiding a contribution obligation to the Pension Fund, Harris Davis avoids the grievous burden of pension withdrawal liability borne by Mohawk and/or every other member of the Association, which provides Harris Davis with an incalculable competitive advantage over any employers, including Mohawk, who have and continue to participate and remit contributions  into the Pension Fund in exchange for obtaining Iron Workers from Local 17.  Such competitive advantage will persist through the term of the Contract, permitting Harris Davis to undercut Mohawk on the pricing of several significant Northeast Ohio construction projects involving Covered Work, including projects scheduled for the first quarter of 2014.

44.     By relieving Harris Davis of the obligation to contribute to the Pension Fund, Local 17 has violated the Favored Nations Clause in a manner irremediable by extension of the same terms to Mohawk.  Execution of the Rebar Agreement benefits only Harris Davis because extending the same terms to current contributing employer of the Pension Fund would trigger a withdrawal and the corresponding imposition of withdrawal liability under ERISA.

45.     By letter dated January 14, 2014, Mohawk provided notice to Local 17 and the International that the Rebar Agreement violates the Favored Nations Clause and demanded Local 17 cease and desist providing labor to Harris Davis on any project involving Covered Work and that the International honor and not interfere with the Favored Nations Clause.   Both the

International and Local 17 refused to submit a substantive response on or before January 17, 2014.

46.     Article XXVII of the Contract contains a grievance procedure for disputes or disagreements arising between parties to the Contract.  The International is not party to the Contract.

47.     Mohawk and the International are party to an Iron Workers International Agreement dated November 19, 2004 ("International Agreement").   A true and correct copy of the International Agreement  is attached hereto as **Exhibit D.**

48.      Section 11 of the International Agreement, however, refers any dispute thereto to the grievance procedure of the Contract.  Thus, the International Agreement has no effective grievance procedure for the resolution of a dispute involving the Favored Nations Clause, the compelled violation of the Favored Nations Clause or the International's execution and administration of the Rebar Agreement, nor does it afford an effective arbitration remedy for the violation of the Favored Nations Clause caused by the Rebar Agreement.  Consequently, exhaustion of the internal grievance procedure as set forth in Article XXVII of the Contract would be an exercise in futility since the contractual grievance procedure cannot provide the relief sought by Mohawk in this Complaint. The instant dispute involves parties, agreements, and/or issues not governed by the Contract, and/or over which an arbitrator selected under the Contract would have no authority.  Since the grievance procedure as set forth under the Contract is inadequate and would afford no meaningful remedy, filing a grievance in this matter would be futile and Mohawk, therefore, is not compelled  to initiate such a grievance.

49.     Unless Defendants' enforcement of the Rebar Agreement and consequent violations of the Favored Nations Clause are enjoined for any Covered Work on future projects

within Local 17's jurisdiction, Mohawk will suffer immediate, irreparable harm for which no adequate remedy at law exists.

## ANTITRUST BACKGROUND

50.     Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully rewritten herein.

51.     The geographic area for Local 17's 1,600 member employers includes ten (10) counties in "Northeast Ohio" (namely: Cuyahoga, Ashtabula, Erie, Geauga, Huron, Lake, Medina, Portage, Summit and Lorain Counties), and Northeast Ohio is the "geographic area" relevant to this dispute.

52.     The Rebar Agreement covers this same geographic area and other areas.

53.     Mohawk does business in Northeast Ohio and other portions of the geographic area covered by the Rebar Agreement.

54.     As an established and dominant producer of steel, Nucor is attempting to vertically integrate itself into various construction markets which, notable to Mohawk, include Northeast Ohio, other parts of the Midwest and of the area covered by the Rebar Agreement.

55.     Harris Davis has market power in Northeast Ohio.  Harris Davis' market power is derived from its support from Nucor, including Nucor's financial strength and bargaining power; and high barriers to entry in the steel and rebar industries.

56.     Nucor has a history of entering into joint ventures or similar business arrangements with the intent and effect of achieving market dominance in particular markets and in the steel and rebar industries.

57.     Nucor formed, and provides financial backing to, Harris Davis for the purpose of performing the Covered Work in Northeast Ohio and surrounding states, as contemplated by the Rebar Agreement.

58.     Harris Davis used Nucor's bargaining power and/or market dominance to help it secure the Rebar Agreement.

59.     Through the Rebar Agreement, the International gave Harris Davis an exclusive benefit of which the current Local 17 member employers cannot readily take advantage, since doing so would trigger an immediate withdrawal liability that few, if any, could financially survive.

60.     Harris Davis intended to create such a competitive advantage for itself and to make it more difficult for other employers to bid competitively on jobs for the Covered Work. Although Harris Davis arguably used its competitive advantage to submit a lower bid for the Project, the long term effect with respect to bids for similar projects in the future will be to reduce competition as other employers such as and including Mohawk find they cannot compete in the long run.

61.     Harris Davis's anticompetitive and predatory intent was or should have been readily apparent to the International from the terms and conditions offered by Harris Davis, including the exclusive use of Iron Workers, and not Carpenters, for Covered Work.

62.     Competition for jobs for the Covered Work in Northeast Ohio and other regions of the country has increased as the number of jobs in recent years has decreased, in part due to general economic conditions and the downturn in major construction projects in Northeast Ohio and other regions of the country.

63.     Companies such as Mohawk face stiff competition in bidding for projects involving Covered Work, and the difference between a successful and unsuccessful bid may be as little as a few dollars.

64.     The defendants colluded and agreed to a course of conduct that includes breach of the Favored Nations Clause and is intended to reduce competition for, and the number of competitors providing services for, the Covered Work.

65.     The relevant "Product/Service Market" is the provision of skilled labor services for performance of the Covered Work, i.e., installation of rebar (and the related installation activities of welding, sheeting, and rigging) on construction projects as part of concrete installation operations on construction projects, such as roads, bridges, buildings, and similar projects.

66.     Iron Workers and Carpenters have performed these highly skilled services throughout the country and in Northeast Ohio.

67.     Because Cleveland, Ohio is a transportation hub, and because its sizeable general contractor ranks are small, penetration by specialty rebar installers is generally limited and only earned over time.  Because much of the construction work presently available in the greater Cleveland area is publically owned, and because projects require intermittent use of substantial manpower, this work is generally performed by Union contractors in their various trades.

68.     Mohawk and Harris Davis both bid rebar work in Northeast Ohio and other areas covered by the Rebar Agreement.

69.     Steel manufacturers throughout the world, over the past several years, have begun to vertically integrate into industries that support their manufacture and sale of steel products in a manner not previously contemplated.  This specifically includes purchase or a creation of steel

erection contractors or, in this case, specialty rebar installers (Iron Workers).  Nucor's relative buying power has enabled it to rapidly grow Harris Davis's operations throughout the country and in Northeast Ohio.

70.    Since entering into the Rebar Agreement, Harris Davis has been the successful bidder on projects for the Covered Work in Northeast Ohio.

71.    The Rebar Agreement provides Harris Davis with a substantial and unfair competitive advantage that, if not arrested, will continue to allow Harris Davis to obtain a disproportionate volume of Covered Work within Local 17's jurisdiction.

72.    Elimination of the obligation to make Pension Fund contributions could and did result in a lower bid for the Covered Work.  Under these circumstances, such a lower bid is not the result of competition, but the provision of the Rebar Agreement that permits Harris Davis to eliminate certain costs for performing the Covered Work.

73.    The Rebar Agreement can be construed as nothing less than the joint and concerted activity of the International and Harris Davis to reduce and eventually eliminate competition within Local 17's jurisdiction and any other areas covered by the Rebar Agreement or similar agreements.

74.    The Rebar Agreement relieves Harris Davis of obligations to contribute to the Pension Fund and shields it from pension withdrawal liability under ERISA Section 4201. Other employers, including Mohawk, cannot compete under these circumstances, and thus the long-term effect will be to lessen, not increase, competition.

75.    Any claimed "procompetitive" effect of Harris Davis's lower bids for the Covered Work is illusory because it is the result of  the Rebar Agreement, not true competitive bidding.

76. The Rebar Agreement has robbed and will continue to rob Local 17's Pension Fund of contributions that would be required of any other successful bidder for the Covered Work. In addition, the long term results will be to lessen competition as Local 17's employer members may face pension withdrawal liability, thus eliminating most or all of them from the market. Because Harris Davis will pull Iron Workers, not Carpenters, from the Union halls, the Carpenters will also suffer the adverse effects of this predatory activity.

77. Harris Davis entered into the Rebar Agreement to lessen competition between it and other employers in the industry, including Mohawk. Harris Davis entered into the Rebar Agreement in order to obtain and/or maintain a monopoly power in the relevant market.

78. The International entered into the Rebar Agreement based on Harris Davis' promise to employ only Iron Workers and not Carpenters to perform the Covered Work on all projects for which Harris Davis was the successful bidder.

79. Based on the advantages conferred by the Rebar Agreement, Harris Davis is almost assured of being the successful bidder, and the International and Local 17 are thereby assured their members will be employed to perform the Covered Work – with no contribution by Harris Davis to Local 17's Pension Fund. This will cause or hasten the failure of the Pension Fund, for which all other Local 17 employer-members will have amplified mass withdrawal liability.

80. The logical effect the rebar Agreement, and the result anticipated by the parties to the Rebar Agreement, will be, over time, to reduce the number of employers who submit bids for the Covered Work, eventually leaving Harris Davis with monopoly power.

81. With the protection afforded to it by the Rebar Agreement, Harris Davis is able to, and has, bid jobs at prices that are below those of other competitors, including Mohawk. Using

15

this unfair advantage, Harris Davis will continue to increase its market power, attempt to monopolize the relevant  market, and eventually will be able to bid as a monopolist.  The outcome will likely be increased prices and a reduction in the number of competitors.

82.    Harris Davis' successful bids and its corresponding gain in market share are directly attributable to the Rebar Agreement.

83.    Mohawk was and is a target of Harris Davis's anticompetitive conduct, as other employers for the Covered Work.  The individual and concerted anticompetitive conduct of Harris Davis, Local 17, and the International has reduced, and if left unchecked will continue to reduce, competition in the relevant markets.

## SECOND CAUSE OF ACTION
## MONOPOLIZATION IN VIOLATION OF 15 U.S.C. § 2
### (Against Harris Davis)

84.    Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 83 as if fully rewritten herein.

85.    This is an action against Harris Davis for monopolization of the relevant markets described above, in violation of 15 U.S.C. § 2.

86.    Harris Davis has engaged in anticompetitive and predatory conduct in order to obtain and maintain a monopoly position in the relevant markets.

87.    Harris Davis has used the Rebar Agreement to obtain a dominant position or monopoly power in the relevant markets.

88.    Harris Davis has engaged in exclusionary conduct to obtain and maintain a dominant or monopolistic position in the relevant markets.

89.    Mohawk has been injured in its business or property, and is threatened with further injury to its business or property as a result of Harris Davis's conduct.

16

90.     As a direct and proximate result of Harris Davis's wrongful actions described herein, Mohawk has sustained actual damages and will continue to accrue and sustain such damages in the future on an ongoing basis.

91.     As a direct and proximate result of Harris Davis's wrongful actions described herein, competition in the relevant markets has been and will continue to be damaged on a continuing and ongoing basis.

**THIRD CAUSE OF ACTION**
**ATTEMPTED MONOPOLIZATION IN VIOLATION OF 15 U.S.C. § 2**
**(Against Harris Davis)**

92.     Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 91 as if fully rewritten herein.

93.     This is an action against Harris Davis for attempted monopolization of the relevant markets described above, in violation of 15 U.S.C. § 2.

94.     Harris Davis has engaged in anticompetitive and predatory conduct in order to attempt to obtain a dominant or monopoly position in the relevant markets.

95.     Harris Davis has used the Rebar Agreement in order to attempt to obtain a dominant or monopoly position in the relevant markets.

96.     Since entering into the Rebar Agreement, Harris Davis has a dangerous probability of successfully obtaining a dominant or monopoly position in the relevant markets, including by being able to substantially underbid other competitors as a result of the Rebar Agreement.

97.     There are high barriers to entry in the relevant markets and a limited number of opportunities generally during a limited time of year for bidding on the Covered Work, making the relevant markets susceptible to monopolization or attempts to monopolize.

98.    Harris Davis engaged in a course of predatory or anticompetitive conduct with the specific intent to attempt to obtain and maintain monopoly power in the relevant markets.

99.    Mohawk has been injured in its business or property, and is threatened with further injury in its business or property as a result of Harris Davis's conduct.

100.    As a direct and proximate result of Harris Davis's wrongful actions described herein, Mohawk has sustained actual damages and will continue to accrue and  sustain such damages in the future on an ongoing basis.

101.    As a direct and proximate result of Harris Davis's wrongful actions described herein, competition in the relevant markets has been and will continue to be damaged on a continuing and ongoing basis.

**FOURTH CAUSE OF ACTION**
**CONSPIRACY TO MONOPOLIZE VIOLATION OF 15 U.S.C. § 2**
**(Against Harris Davis, Local 17 and the International)**

102.    Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 101 as if fully rewritten herein.

103.    This is an action against Harris Davis, Local 17 and the International for conspiracy to monopolize the relevant markets described above, in violation of 15 U.S.C. § 2.

104.    Harris Davis engaged in concerted activity or conspired with Local 17 and the International to monopolize the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

105.    Harris Davis and the International entered into the Rebar Agreement to provide Harris Davis preferential treatment and an unfair competitive advantage by relieving Harris Davis of the obligation to contribute to the Pension Fund with no exposure to it for withdrawal liability.

18

106.    Local 17 and the International conspired and combined with Harris Davis, a non-labor organization, in a manner intended to lessen, and that has resulted in lessened, competition between Harris Davis and other employers in the industry.  Local 17 and the International are trading acquisition of hours previously performed by Carpenters for the destruction of Local 17 member employers and the Pension Fund.

107.    Harris Davis, the International and Local 17, engaged in concerted activity, including through the Rebar Agreement, with the intent to lessen or eliminate competition by and between Harris Davis and Mohawk or other competitors in the relevant markets.

108.    Harris Davis, the International and Local 17, engaged in concerted activity, including through the Rebar Agreement, that has had anticompetitive effects on Mohawk and other competitors in the relevant markets.

109.    Mohawk has been injured in its business or property, and is threatened with further injury as a direct and proximate result of the conspiratorial or concerted activity among Harris Davis, the International and Local 17.

110.    As a  direct and proximate result of the conspiratorial or concerted activity among Harris Davis, the International and Local 17 competition in the relevant markets has been and will continue to be damaged on a continuing and ongoing basis.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE VALENTINE ACT (O.R.C. § 1331.02)
#### (Against Harris Davis)

111.    Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 110 as if fully rewritten herein.

112.    This is an action against Harris Davis for monopolization of the relevant markets described above, in violation of the Valentine Act, O.R.C. § 1331.02.

113.    Harris Davis has engaged in anticompetitive and predatory conduct in order to obtain and maintain a monopoly position in the relevant markets.

114.    Harris Davis has used the Rebar Agreement to obtain a dominant position or monopoly power in the relevant markets.

115.    Harris Davis has engaged in exclusionary conduct to obtain and maintain a dominant or monopolistic position in the relevant markets.

116.    Mohawk has been injured in its business or property, and is threatened with further injury to its business or property as a result of Harris Davis's conduct.

117.    As a direct and proximate result of Harris Davis's wrongful actions described herein, Mohawk has sustained actual damages and will continue to accrue and sustain such damages in the future on an ongoing basis.

118.    As a  direct and proximate result of Harris Davis's wrongful actions described herein, competition in the relevant markets has been and will continue to be damaged on a continuing and ongoing basis.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**CONSPIRACY TO VIOLATE THE VALENTINE ACT (O.R.C. § 1331.04)**</u>
**(Against Harris Davis, Local 17 and the International)**

119.    Mohawk re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 118 as if fully rewritten herein.

120.    This is an action against Harris Davis, Local 17 and the International for conspiracy to monopolize or attempt to monopolize the relevant markets described above, in violation of O.R.C. § 1331.04.

121.    Harris Davis and the International entered into the Rebar Agreement to provide Harris Davis preferential treatment and an unfair competitive advantage by relieving Harris

Davis of the obligation to contribute to the Pension Fund with no exposure to it for withdrawal liability.  Local 17 and the International conspired and combined with Harris Davis, a non-labor organization, in a manner intended to and that had resulted in lessened competition between Harris Davis and other employers in the industry.

122.   Harris Davis, the International and Local 17, engaged in concerted activity, including through the Rebar Agreement, with the intent to lessen or eliminate competition by and between Harris Davis and Mohawk or other competitors in the relevant markets.

123.   Harris Davis, the International and Local 17, engaged in concerted activity, including through the Rebar Agreement, that has had anticompetitive effects on Mohawk and other competitors in the relevant markets.

124.   Mohawk has been injured in its business or property, and is threatened with further injury a direct and proximate result of the conspiratorial or concerted activity among Harris Davis, the International and Local 17.

125.   As a  direct and proximate result of the conspiratorial or concerted activity among Harris Davis, the International and Local 17 competition in the relevant markets has been and will continue to be damaged on a continuing and ongoing basis.

## **DEMAND FOR TRIAL BY JURY**

Mohawk hereby demands trial by jury as to all matters triable of right to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendants, and each of them:

A)   Declaring that Local 17 has violated the Favored Nations Clause of the Contract.

B)   Declaring that the International has compelled Local 17 to violate the Favored Nations Clause.

C)      Enjoining Local 17 from violating the Favored Nations Clause on any future project by relieving Harris Davis from paying contributions into the Pension Fund; or, in the alternative, ordering Local 17 to indemnify Mohawk against any withdrawal liability incurred as a result of application of the Favored Nations Clause.

D)      Enjoining the International from compelling Local 17's violations of the Favored Nations Clause on any future projects.

E)      Granting Plaintiff compensatory and other damages in an amount to be determined at trial as contemplated by and available through 15 U.S.C. § 2 and ORC § 1331 for the damages Plaintiff has actually sustained.

F)      Granting Plaintiff three times the amount of damages actually sustained.

G)      Granting Plaintiff its reasonable attorneys' fees and the costs of this action; and

H)      Granting Plaintiff such other and further relief as this Court deems just and appropriate.

Dated April 7, 2014

> */s/ Thomas O. Crist*
> Thomas O. Crist (0064454)
> tcrist@beneschlaw.com
> Peter N. Kirsanow, Esq. (0034196)
> pkirsanow@beneschlaw.com
> Shaylor Steele (0081400)
> ssteele@beneschlaw.com
> Benesch, Friedlander, Coplan
> & Aronoff LLP
> 200 Public Square, Suite 2300
> Cleveland, Ohio  44114-2378
> Telephone: (216) 363-6108
> Facsimile:  (216) 363-4588
>
> *Counsel for Plaintiff*
> *Mohawk Re-Bar Services, Inc.*

<u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *First Amended Complaint* was electronically filed on April 7th, 2014 with the Court.  Notice of the filing will be sent through the Court's electronic filing system and all parties may access this filing through that system.

/s/ Thomas O. Crist
*One of the Attorneys for Plaintiff Mohawk*
*Re-Bar Services, Inc.*