

LOCAL 17

IRONWORKERS

*Photo Courtesy of:* Scott Cooper #1298199

AGREEMENT

2013-2018

EXHIBIT

B

tabbies

## N O T I C E

**IRON WORKERS LOCAL 17**
**FRINGE BENEFIT FUNDS, INC.**
(Welfare, Pension and Annuity Funds)
3250 Euclid Avenue, Room 150
Cleveland, OH 44115

Mailing Address:
PO Box 6327
Cleveland, OH 44101

Toll Free Number: 1-800/788-8406
Phone: 216/241-1086
Fax: 216/241-2904

**JOINT IRON WORKERS**
**APPRENTICESHIP & TRAINING CENTER**
1542 East 23rd Street
Cleveland, OH 44114

Phone: 216/685-1781
Fax: 216/685-1544

## TABLE OF CONTENTS

| Description | Article | Page |
|---|---|---|
| Agreement | | 1 |
| Preamble | | 1 |
| Craft Jurisdiction | I | 1 |
| Territory | II | 6 |
| Work Limitation | III | 6 |
| Ironworker Management Progressive Action Cooperative Trust | IV | 6 |
| Employment Regulations | V | 7 |
| Stewards | VI | 10 |
| Work Hours | VII | 11 |
| Shift Work | VIII | 12 |
| Overtime And Holidays | IX | 13 |
| Wage Rates | X | 14 |
| Minimum Pay And Reporting Time Inclement Weather Expense | XI | 17 |
| Parking | XII | 17 |
| Piecework | XIII | 17 |
| Work Limitation | XIV | 17 |
| Pay Day | XV | 18 |
| Salary Continuation | XVI | 18 |
| Wages Designated For Pension, Insurance, Annuity And Assessment Check-off | XVII | 19 |
| Ironworker Management Progressive Action Cooperative Trust | XVIII | 23 |
| Bonding Requirements | XIX | 24 |
| Foremen | XX | 26 |
| Welders And High Tension Bolts | XXI | 26 |
| Iron Worker Tools | XXII | 27 |
| Drinking Water-Clothes Room | XXIII | 27 |
| Compensation Insurance | XXIV | 27 |
| Apprenticeship | XXV | 27 |
| Jurisdictional Disputes | XXVI | 29 |
| Settlement Of Disputes | XXVII | 29 |
| Strikes And Lockouts | XXVIII | 31 |
| Subcontracting | XXIX | 31 |
| Construction Industry Service Program | XXX | 32 |
| Scope Of Agreement | XXXI | 34 |
| Health And Safety Responsibility | XXXII | 34 |
| Joint Committee | XXXIII | 35 |
| Saving Clause | XXXIV | 35 |
| Favored Nation Clause | XXXV | 35 |
| Duration And Termination | XXXVI | 36 |
| Boundary Lines | | 38 |

## AGREEMENT

THIS AGREEMENT made and entered into this 30th day of April, 2013 and to be effective the 1st of May, 2013, by and between STEEL AND IRON CONTRACTORS ASSOCIATION and the CONSTRUCTION EMPLOYERS ASSOCIATION OF CLEVELAND, hereinafter referred to as the "Employer," and the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS LOCAL NO. 17, CLEVELAND, OHIO, hereinafter, referred to as the "Union."

As used in this Agreement, the term "Iron Worker" refers to any individual performing work covered by this Agreement. All references to the masculine pronoun in this Agreement shall be deemed to include the feminine pronoun as well. All references to the singular in this Agreement shall be deemed to include the plural where appropriate.

## PREAMBLE

This Agreement is entered into by collective bargaining to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between Employer and Union in this trade and to prevent waste, unnecessary and avoidable delays, and expenses, and, so far as possible, to provide for labor's continuous employment in accordance with the conditions herein set forth and at wages herein agreed upon; also that stable conditions may prevail in the building industry and building costs may be as low as possible, consistent with fair wages and conditions, and further, the establishment of the necessary procedures by which these ends may be accomplished.

## ARTICLE I
## CRAFT JURISDICTION

(a) It is agreed that the jurisdiction of work covered by the Agreement is that provided for in the charter grant issued by the American Federation of Labor ("AFL") to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, hereinafter referred to as the "International," it being understood that the claims are subject to

1

trade agreements and the following five paragraphs:

1. This Agreement covers all field erection and construction work traditionally performed by and coming under the jurisdiction of the International. The Employer recognizes that the claimed scope of work covered under this Agreement by the International is that provided for but not limited to the jurisdictional claims contained within the charter grant issued by the AFL to the International and contained in Article IV of the International's Constitution.

2. Agreements, national in scope between the International and other International Unions covering work jurisdiction and allocation and division of work among employees represented for the purpose of collective bargaining by such labor organizations, shall be respected and applied by the Employer.

3. It is understood and agreed that employers signatory to this Agreement shall not sign a stipulation to be bound by the terms of the agreement establishing the Impartial Jurisdiction Disputes Board nor be bound by its decisions. Any such stipulation that previously may have been entered into on or on behalf of the Employer, is rescinded by execution of this contract. It is further understood that the parties to this Agreement shall not submit any dispute to the Impartial Jurisdictional Disputes Board.

4. The foregoing Section 3 shall remain in full force and effect until such time as all other employers in the construction industry having agreements with the International or its affiliates, and all other unions affiliated with the Building and Construction Trades Department, have signed a stipulation to be bound by the terms of the agreement and decisions of the Impartial Jurisdictional Disputes Board.

5. In the event of any dispute as to jurisdiction of work covered by the terms of this Agreement being claimed by unions other than those affiliated with the Building and Construction Trades Department, then such dispute shall be referred to the International Unions involved, for determination by whatever procedures they may adopt. The work shall proceed as assigned by the individual Employer until such determination

2

by the International Unions. Any jurisdictional determination shall be implemented immediately by the individual Employer involved.

There shall be no strikes, work stoppages, or other interferences with the work by reason of jurisdictional disputes.

(b) This Agreement shall cover and include but is not limited to the unloading, handling, fabrication, re-fabrication, erection, and dismantling of structural, ornamental, reinforcing steel, metals, plastic, composite and engineered materials and it is understood and agreed that the International claims for its members the fabrication, production, erection and construction of all iron, steel, ornamental lead, bronze, brass, copper, aluminum, all ferrous and nonferrous metals; precast, prestressed and post-stressed (post-tensioning equipment such as: jacks, grout machines and materials) concrete structures; and replacement materials, agitators, air ducts, anchors, application of all sealants such as Thiokol, Neoprene and similar types used to seal metal surfaces; aprons, aqueducts, awnings, bar-joist, blast furnaces, bleacher seating, book stacks, boilers (sectional water tube, and tubular), boxes, brackets, bridges, bucks, bulkheads, bunkers, cableways, caissons, canopies, caps, cast tiling, chutes, clips, cofferdams, concentrators, conveyors, coolers, coping, corbels, corrugated sheets when attached to steel frames; cranes (the erection, installation, handling, operating and maintenance on all forms of construction work), crushers, cupolas, curtains, dams, decking (metal); roof decking (such as "Colfar" and similar type materials, as well as "Trusdeck," Mahon "M" deck and other dual purpose type roof deck), derricks, docks, domes, dredges, drums, duct and trench frames and plates, dumb waiter enclosures, dumpers, elevators, elevator cars, elevator enclosures, enamel tanks, enamel vats, escalators, expanded metals, fascias, false work, fans, fencing, fire escapes, fins, flag poles, floor construction and flooring, flumes, frames, frames in support of boilers, fronts, fur rooms, gates, grating, grillage and foundation work, grill work, guards, hangers, hanging ceilings, hoppers, hot rooms, inclines, iron doors, jail and cell work, joists (pre-cast, pre-stressed and post-stressed [post-tensioning equipment such as: jacks, grout machines and materials]), kalomeined doors, kilns, lintels, lockers, locks, louvers, machinery (moving, hoisting and placing on foundations), making and installation of all

articles made of wire and fibrous rope; marquees, material altered in field, such as; framing, cutting, bending, drilling, burning, and welding by acetylene gas and electric machines; metal curtain wall, metal exterior doors, metal floor decking, metal forms and false work pertaining to concrete construction, metal furniture, metal windows and enclosures, mixers, monorails, multi-plate, operating devices, ovens, overhead doors, pans, panels (insulated and non-insulated, factory and field assembled), pen stocks, pile drivers, plates, porcelain enameled panels, prefabricated metal buildings, pulverizes, racks, railings(including pipe), railroad bridgework and maintenance, rebar tie guns, reservoirs, rigging (including shipyards, navy yards, vessels and government departments), roofs, rolling doors, rolling shutters, safe deposit boxes, safes, sash, scaffolding, seats, shafting, sheet piling, shelving, shoring, sidewalk and vault lights, signs, skip hoists, skylights, smoke conveyors, spandrels (metal) and (precast concrete), spillways, stacks, stairways, stokers, storage rooms, stoves, subways, sunshades, solar panels (structural supports), tables, towers, tanks, tracks, tramways, travelers, traveling sheaves, trusses (steel, Howe and combination), tunnels, vats, vault doors, vaults, ventilators, vertical hydraulic elevators, vessels, viaducts, wind turbines (erection of) including onshore and offshore, window wall, wire work; wrecking and dismantling of all the above and all housesmith work and submarine diving in connection with or about the same.

(c)  Field alterations on the above mentioned items, together with all framing done in the field.

(d)  An Iron Worker will be used to straighten, tie or adjust steel rods when concrete is being poured, but will not be required as a standby. When concrete is poured before or after regular working hours, an Iron Worker shall remain on the job to perform his/her regular work and be available in case rods need adjustment.

(e)  When it becomes necessary in the operation of power operated booms or cableways to use a signalman, an Iron Worker shall be employed.

(f)    On the unloading, handling and setting of stone with powercrawler,

4

locomotive or truck cranes, an Iron Worker shall be employed who will work under the supervision of the stone setter.

(g) When erecting structural steel with mobile or power operated rigs of any description, the crew shall consist of a foreman and not less than four (4) Iron Workers.

(h) When unloading structural steel with power equipment, the crew shall consist of a foreman and not less than (4) Iron Workers.

(i) During the unloading and setting of all wall bearing bar joists and beams in building construction 24" depth and under, the crew shall be a foreman and three (3) Iron Workers; over 24" depth, a foreman and four (4) Iron Workers.

(j) When unloading and handling materials, other than structural steel, the crew size shall be determined by the Employer consistent with safe work practices.

(k) Shear studs on walking surfaces used for composite structural design shall be field applied after erection. On columns, webs and floorings, shear studs shall be field applied and may be applied prior to erection.

(l) Journeymen shall also be employed for the erection, operation and removal of travelers, derricks, poles, derrick cars, booms, outriggers and spool work as awarded to the International by the AFL, and such other items as have been awarded to the International by the Building and Construction Trades Department.

(m) No less than six (6) Iron Workers and a foreman shall be employed around a guy or stiff leg derrick used on steel erection.

(n) During the unloading and setting of light gauge metal trusses, the crew shall be a foreman and three (3) ironworkers.

(o) Pre-Engineered Metal Building. 1. Steel Erection Crew: There shall be a Foreman and four (4) ironworkers. One of the four (4)

ironworkers shall be a journeyman ironworker. The remaining three (3) may be journeyman ironworkers or apprentices. 2. Detail and Sheeting: For every seven (7) men there shall be one (1) foreman. These men may consist of journeyman ironworkers, or apprentices. All Foreman must be journeyman ironworkers, and shall be paid the Foreman rate of pay. 3. No money allowance will be paid for the use of power tools.

## ARTICLE II
## TERRITORY

The territory covered by this Agreement shall be the territorial jurisdiction of the Union and shall include the following counties; Cuyahoga, Ashtabula, Erie, Geauga, Huron, Lake, Medina, Portage, Summit and Lorain. See territorial jurisdictional boundaries.

## ARTICLE III
## WORK LIMITATION

No limitation may be placed upon the amount of work which an Iron Worker shall perform during the working day, nor shall there be any restrictions against the use of machinery, tools, or labor saving devices, nor against the use of any materials, raw or manufactured, except prison-made materials.

## ARTICLE IV
## IRONWORKER MANAGEMENT PROGRESSIVE ACTION
## COOPERATIVE TRUST

The Parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. The Employer and the Union have a commitment to protect people and property, and to provide a safe working environment. The purpose of the program is to establish and maintain a drug free, alcohol free, safe healthy work environment for all Iron Workers. The Employer agrees to hold the Union harmless and to bear any expenses incurred by the Union in defending litigation arising out of the Employer's activities in carrying out the drug testing program. This Ironworker Management

Progressive Action Cooperative Trust (IMPACT), is incorporated by reference and may be obtained upon request from the Union or The Construction Employers Association.

## ARTICLE V
### EMPLOYMENT REGULATIONS

(a) NON-DISCRIMINATION CLAUSE: The Employer and the Union agree that they will not discriminate on the basis of race, color, religion, sex, age, disability or national origin against any person with reference to recruitment, hiring, promotion, demotion, transfer, rates of pay, or other terms and conditions of employment, selection for apprentice training, lay-off, or termination of employment. The Parties hereto agree that all participation in either the apprenticeship program or the Union shall be based upon qualifications alone and without regard to race, color, religion, sex, age, disability or national origin. The parties hereby declare their support of diversity and inclusion in employment. Through the Joint Apprenticeship Committee, the parties have an affirmative action plan in accordance with standards set-forth by the Ohio sate Apprenticeship Council.

The Parties hereto further agree that all programs that affect the apprenticeship and journeymen programs of the Union, whether sponsored jointly or not, shall be administered in accordance with the National Labor Relations Act and Title VII of the Civil Right Act of 1964.

(b) It is understood and agreed that on or after eight (8) days after the signing of this Agreement and for the period of time covered by this Agreement, it is a condition of employment that all Union members become and remain Iron Workers in good standing of the Union and any Iron Workers employed on or after their eighth (8th) day of employment must become and remain members of the Union.

(c) The Employer recognizes that the crafts covered by this Agreement are highly skilled and excessively hazardous, and agrees that if in the opinion of the Union's Business Manager, after consultation with the Steward and Superintendent, it is determined that any Iron Worker

7

hired by the Employer does not possess the required skill or performs his duties in such a manner that he endangers the life or person of any other employee, it shall not be considered a violation of this Agreement to cause a stoppage of work until said incompetent or careless employee is removed.

(d) Iron Workers shall make every effort to work in inclement weather consistent with safe-work practices.

(e) The Union shall not interfere with the Employer's employees during working hours except that the Union's Business Agent may consult with the Superintendent, or foreman or the steward on the job when necessary.

(f) The Employer shall not be required to hire Iron Workers through the Union or its representatives, but may employ them directly. Neither shall Iron Workers be transferred from one Employer to another by the Union without consent of the Employer for whom they are working.

(g) Foremen shall be selected by the Employer.

(h) The Employer retains the full and exclusive rights, powers, functions and authority of management, including but not limited to the operation of the job and the direction of the working forces, including the right to hire, suspend and discharge for just cause, and the right to relieve employees from duty because of lack of work, inability to perform the work, or for other just reasons, except as provided elsewhere in this agreement. It is recognized that the Employer has the exclusive right to determine the establishment of quality standards and the judgment of the quality of workmanship required. It is understood that the Employer has the exclusive right to the establishment, modification and enforcement of jobsite rules and regulations which are not in direct conflict with any of the provisions of this Agreement.

(i) The Employer agrees to comply with the specific safety requirements of Bulletin No. 202 of the Industrial Commission of Ohio relating to operation of cranes in the vicinity of high tension wires and to follow safety devices as may be recommended by the Industrial Commission.

8

(j)  At the Employer's option, it may require any Iron Worker to sign out for personal tools, such as, but not limited to, hard hats, safety belts, welding hoods, welding gloves, leathers, goggles, etc., which the Iron Worker will retain while in the Employer's employ. Iron Workers shall return such items upon the termination of their employment and upon failure to do so the Employer may deduct the actual cost of such items from the Iron Worker's paycheck. It is further understood that a safe place will be provided where Iron Workers may leave hard hats, safety belts and personal belongings overnight or during other non-working hours.

(k)  It shall be mandatory for all Iron Workers to wear hard hats from the time they arrive on the construction site until they depart, and to wear personal protective equipment where, in the opinion of the Employer, it is necessary. Failure to do so shall be reason for immediate termination of employment.

(l)  Where a specific work gang is not complete due to the failure of an Iron Worker to show up at 9:00 A.M., the job steward or foreman may call the Union Hall for a replacement; or the Iron Worker may be replaced from other available employees on the job. The replacement shall report as soon as possible and his/her time shall start at 8:00 A.M. The crew shall continue to work until such time as a replacement reports to work. If the regular crew member does not report to the job by 9:00 A.M. and reports to work after 9:00 A.M. and his/her replacement has been called, the Employer shall, at its option, determine whether the Iron Worker, will or will not work the day. If he/she does work, his/her time will start from the time he/she starts to work.

(m)  If the Union after checking with other qualified building trades unions or shops is unable to fill the request of the Employer for employees within a forty-eight (48) hour period after such request for employees (Saturday, Sunday, and Holidays, excepted), the employer may employ qualified workers from any source who will then be required to join the Union within eight (8) days.

(n)  BONUS PAY - Employers who elect to pay a bonus for excellent work performance are NOT required to pay fringe benefits for those

9

employees who receive additional voluntary compensation.

## ARTICLE VI
## STEWARDS

There shall be a working Steward on each job who shall be appointed by the Union's Business Manager or Business Agent. The Steward shall be on the job site at all times when Iron Workers, excluding foreman, are working for an Employer. The Steward shall be a qualified Iron Worker capable of performing work of his/her craft and shall exercise no supervisory authority. In addition to his/her work as an Iron Worker, the Steward shall have the right to receive, but not solicit complaints or grievances. The Steward shall discuss and assist in the adjustment of grievances with the Iron Worker's appropriate supervisor.

1.    The steward shall not be transferred from job to job, nor laid off without first notifying the Union.

2.    When an Iron Worker is injured on the job, the Steward shall see that he/she is given first-aid, and if seriously injured taken to the hospital. The Steward shall suffer no loss of time (not to exceed the normal workday), while assisting an injured Iron Worker taking care of his/her tools and clothing, or taking him/her home.

3.    The Employer shall not discriminate against the Steward for performance of his/her duties in any way.

4.    The Steward shall, in addition to his/her work as an Iron Worker, be permitted to perform during working hours such normal Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees to allow the Steward a reasonable amount of time for the performance of such duties. The Steward shall not leave his/her work area without first notifying his/her appropriate supervisor as to his/her intent, the reason therefore, and where he/she can be reached. The Steward shall receive his/her regular craft's rate of pay.

5. The Steward shall be the last Iron Worker to be discharged and shall remain on the job until it is completed. The Steward shall be the last Iron Worker laid off during a temporary work stoppage and shall be the first Iron Worker called back when work resumes. The Steward shall not be transferred from a job while Iron Workers remain on the job.

6. The Employer agrees to notify the Union representative twenty-four (24) hours prior to a termination of a Steward for just cause.

7. Stewards on jobs outside of Cuyahoga County are entitled to devote a space of two (2) hours twice a month to acquire working permits, if necessary, and to transact other Union business, but shall be compensated for such time as if working on the job.

8. The Employer and the Steward shall cooperate in all matters covered by the Agreement.

9. The Steward will be the last Iron Worker on the job, provided he/she is capable of performing the work, excluding the foreman.

## ARTICLE VII
## WORK HOURS

(a) Eight (8) hours shall constitute a day's work from 8:00 A.M. to 4:30 P.M., but may vary, limited to 7:30 A.M. to 4:00 P.M. or 7:00 A.M. to 3:30 P.M. from Monday - Friday, with one-half (1/2) hour lunch period, full crews for Employer per site.
HOLIDAY: 4-10 WORK WEEK

(b) When a legal Holiday falls on a scheduled workday, the Employer may use a Four-10 hour day work schedule for the remainder of the workweek. Foreman/General Foreman still receive the Holiday Pay when the Employer utilizes the Four-10 work week. Implementation of holiday four-10 work week shall coincide with employer pay period.

(c) Four-10 hour day-jobs must be scheduled for a forty (40) hour workweek duration.

11

1.    Jobs must be forty (40) hour duration Monday through Thursday, first ten (10) hours worked at straight time rate. When switching to four-10 work week, switch to be made first day of employer pay period. All other overtime hours will be paid at double time.

2.    Friday and Saturday, the first ten (10) hours worked will be paid at time and one-half (1 1/2) All other hours worked will be paid at double time. NOTE: Friday is not a premium time day when job is using the Holiday Work Week schedule.

3.    Sundays and Holidays all hours worked will be paid at double time.

4.    Overtime shall begin at the start of the First Shift on Friday, Saturday, Sunday and Holidays. NOTE: Friday is not a premium time day when job is using the Holiday Work Week schedule.
(d)   Changes in the work hours per day will be made to meet special conditions upon application to and approval of the Union's Business Agent.

(e)   On jobs working 4-10's Monday through Thursday, Friday may be utilized as a make-up day when six (6) or more hours are lost due to inclement weather. All Friday make up work must be scheduled as an eight-hour workday. All hours worked in excess of forty (40) hours in a work week or ten (10) hours each day shall be paid at the appropriate overtime rate.

### ARTICLE VIII
### SHIFT WORK

(a)   When shift work is considered necessary by the Employer for some or all crews, the first shift shall work eight (8) hours at the regular straight time rate of pay. The second shift shall work seven and one-half (7 1/2) hours and receive eight (8) hours' pay at the regular straight time hourly rate. The third shift shall work seven (7) hours and receive eight (8) hours' pay at the regular straight time hourly rate.

(b)   A thirty (30) minute unpaid lunch period shall be scheduled at the

midpoint of the scheduled work shift.

(c) The first shift shall begin between 7:00 A.M. - 8:00 A.M.; the second shift shall begin between 3:30 P.M. - 4:30 P.M.; and the third shift shall begin between 11:30 P.M. - 12:30 A.M. Shifts shall not overlap. An Employer may work a second and/or a third shift without a first shift as long as the appropriate shift differential pursuant to this section is paid.

Iron Workers who work the second shift shall receive a shift differential of twenty-five cents ($0.25) per hour. Iron Workers who work the third shift shall receive fifty cents ($0.50) per hour shift differential. Further, whenever overtime is involved, shift additives are to be calculated in accordance with the overtime being paid.

## ARTICLE IX
## OVERTIME AND HOLIDAYS

(a) All overtime work performed Monday through Friday shall be paid at one and one-half (1 1/2) times the straight time hourly rate for the first two (2) hours of overtime and two (2) times the straight time rate for any additional hours worked.

(b) Saturday shall be paid at one and one-half (1 1/2) times the straight time rate for the first ten (10) hours and two (2) times the straight time rate for any additional hours.

(c) Work performed on Sundays and Holidays shall be paid at two (2) times the straight time rate.

(d) There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked.

(e) The observed Holidays shall be New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas Day.

(f) There shall be no work on Labor Day except in cases of emergency.

(g) Any of the above Holidays which occur on a Sunday shall be observed the following Monday.

(h) The Holidays of Section (E) of Article IX, shall be part of the time for which the general foreman and sub-foreman are paid.

(i) Overtime shall begin at the start of the First Shift on Saturdays, Sundays, and Holidays.

(j) All hours before or after the regular eight (8) hour shift is overtime. The overtime rate will be paid to Iron Workers continuously employed beyond twenty-four (24) hours until they receive an eight (8) hour break.

## ARTICLE X
### WAGE RATES
Effective May 1, 2013 - April 30, 2014.

Wage Increases to the following Five (5) Year Agreement. Agreement are as follows:

| | TAXABLE HOURLY RATE | TAXABLE VACATION FRINGE | NON-TAXABLE FRINGE | TOTAL PKG. |
|---|---|---|---|---|
| Journeyman Ironworker | $30.85 | $1.00 | $19.56 | $51.41 |
| Journeyman Ironworker Foreman | $33.35 | $1.00 | $19.56 | $53.91 |
| Journeyman Ironworker General Foreman | $33.85 | $1.00 | $19.56 | $54.41 |
| 1st Year Apprentice (50% of Scale) | $15.43 | $1.00 | $19.56 | $35.99 |
| 1st Year Apprentice @ 6 mo. (55% of Scale) | $16.97 | $1.00 | $19.56 | $37.53 |

14

| | | | | |
|---|---|---|---|---|
| 2nd Year Apprentice (70%) of Scale) | $21.60 | $1.00 | $19.56 | $42.16 |
| 2nd Year Apprentice @ 6 mo. (75% of Scale) | $23.14 | $1.00 | $19.56 | $43.70 |
| 3rd Year Apprentice (80% of Scale) | $24.68 | $1.00 | $19.56 | $45.24 |
| 3rd Year Apprentice @ 6 mo. (85% of Scale) | $26.22 | $1.00 | $19.56 | $46.78 |
| 4th Year Apprentice (90% of Scale) | $27.77 | $1.00 | $19.56 | $48.33 |
| 4th Year Apprentice @ 6 mo. (95 % of Scale) | $29.31 | $1.00 | $19.56 | $49.87 |

### FRINGE BENEFIT BREAKDOWN

| | |
|---|---|
| Pension | $10.00 Per Hour |
| Insurance | $6.20 Per Hour |
| Annuity | $2.50 Per Hour |
| Local Apprentice Fund | $0.48 Per Hour |
| I.M.P.A.C.T. | $0.25 Per Hour |
| C.I.S.P. | $0.13 Per Hour |
| VACATION FUND | $1.00 |
| TOTAL FRINGES | $20.56 Per Hour |

PLEASE NOTE
(a) The foregoing rate shall be effective May 1, 2013, and shall be in force until April 30, 2014.

### WAGE RATES
Effective May 1, 2014 $0.95 Increase To Current Package.
Contact Union Hall for Current Wage Rates and Benefit Breakdowns.

PLEASE NOTE
(a) The foregoing rate shall be effective May 1, 2014, and shall be in force until April 30, 2015.

### WAGE RATES
Effective May 1, 2015 $0.95 Increase to Current Package.
Contact Union Hall for Current Wage Rates and Benefit Breakdowns.

PLEASE NOTE
(a)  The foregoing rates shall be effective May 1, 2015, and shall be in force until April 30, 2016.

## WAGE RATES
Effective May 1, 2017 $0.95 Increase to Current Package.
Contact Union Hall for Current Wage Rates and Benefit Breakdowns.

PLEASE NOTE
(a)  The foregoing rates shall be effective May 1, 2017, and shall be in force until April 30, 2018.

(b)  FOREMAN Foreman shall be paid not less than $2.50 per hour above the journeyman scale during each of the periods set forth above.

(c)  GENERAL FOREMAN General Foreman shall be paid not less than $3.00 per hour above the journeyman scale during each of the periods set forth above.

(d)  When two or more foreman are employed by the same Employer on the same job, one shall receive the general foreman's rate. When there is more than one foreman, at no time will out-of-town supervision exceed Local 17 supervision in numbers.

(e)  General foreman and foreman shall be hired on a straight-time basis, and shall be paid a minimum of forty (40) hours a week/eight (8) hours a day, including paid holidays. Iron Workers mentioned herein shall perform all reasonable duties within the jurisdiction of the Union as ordered by the Employer. If, for any reason beyond the control of the Employer, the job they are on is not operative, the employer has the option to pay General Foreman and Foreman the straight time on jobs bid and worked forty hours or less.

(f)  Where jobs or portions thereof, start on or after the first day of the week and end any time during the week, they shall be paid only for the time actually employed.

**ARTICLE XI**
**MINIMUM PAY AND REPORTING TIME**
**INCLEMENT WEATHER EXPENSE**

(a) When a Iron Worker reports for work within the jurisdiction of the Union at starting time, and weather does not permit him/her to go to work that day, after reporting he/she shall receive two (2) hours show-up time. This two (2) hours show-up time is flexible to be used either at the beginning of the shift or during the first four (4) hours of the shift. All remaining time of the shift is to be paid for actual time worked.

(b) When Iron Workers are hired to report for work at a specific time and place, the wages for those so reporting shall be computed from the time named in such order and when the Iron Workers are ordered out and work is not ready for them, weather prevents work, or the job lasts less than two (2) hours, they shall be paid for two (2) hour's work.

**ARTICLE XII**
**PARKING**

PARKING: Up to $5.00 Maximum per day if no free parking is provided within one-quarter (1/4) mile of the jobsite. Parking receipt to be provided to the Employer.

**ARTICLE XIII**
**PIECEWORK**

It is further agreed that Iron Workers will not contract, subcontract, work piecework, or work for less than the scale of wages established by this Agreement. The Employers agree not to offer and/or to pay, and Iron Workers will not accept a bonus based on specified performance on any individual job.

**ARTICLE XIV**
**WORK LIMITATION**

The Employer and the Union, recognizing the necessity of eliminating restrictions and promoting efficiency, agree that no rules,

17

customs or practices shall be permitted that limit production or increase the time required to do the work.

## ARTICLE XV
### PAY DAY

(a) The regular payday shall be once a week and wages shall be paid in cash or company payroll check. Establish of ability to pay Employees through direct deposit. This vehicle is optional on behalf of the Employer and Employee.

(b) Iron Workers shall be paid once each week on the job by quitting time. Any Iron Worker who has not been paid by quitting time shall receive 4 (4) hours pay per twenty-four (24) hour period at the regular wage rate until payment is made. The Employer shall not hold back more than three (3) days pay.

(c) When Iron Workers are laid off or discharged, they shall be paid in full on the job immediately, and if required to go to some other point or to the office of the Employer, the Iron Workers shall be paid for the time required to go to such place but no less than 2 hours. When Iron Workers quit of their own accord, they shall wait until the regular payday for the wages due them.

(d) Accompanying each payment of wages shall be a separate statement identifying the Iron Worker and showing hours of pay, rate of pay, amount of each deduction, the purpose thereof, and the year to date totals of said deductions and net earnings.

(e) When an Iron Worker's payroll compensation is incorrect or in dispute the Employer shall have two (2) business days to make the appropriate adjustments.

## ARTICLE XVI
### SALARY CONTINUATION

An employer may offer injured workers, eligible for Ohio Workers Compensation's temporary total compensation benefit, salary continuation/wages in lieu of temporary total compensation. No injured

worker shall be required to accept salary continuation/wages in lieu of temporary total compensation. Weekly salary continuation/wages shall consist of an amount equal to forty (40) hours times the contractual straight time hourly rate, less any deductions required by law. Said weekly amount may be prorated to a daily amount in the week that the Employee goes off or on temporary total compensation. Since the Employee shall provide no services for said payment or perform any bargaining unit work the employer agrees to pay to the fund thirty (30) hours health and welfare per forty (40) hour week in addition to salary/ wage continuation.

### ARTICLE XVII
### WAGES DESIGNATED FOR PENSION, INSURANCE, ANNUITY AND ASSESSMENT CHECK-OFF

(a)  The Employer agrees to pay as wages the amounts enumerated in Article X of this Agreement as "Pension Wage," "Insurance Wage," and "Annuity Wage." On overtime, these payments will be made on an hour's paid basis.

(b)  The amounts required to be paid as "Pension Wage" shall be paid to the Pension Fund which shall be administered pursuant to the Agreement and Declaration of Trust dated as of May 1, 1965 which shall conform to all requirements of law and which, together with any amendments thereto, shall be considered as part of this Agreement as though set forth herein. The Agreement and Declaration of Trust shall be administered jointly by an equal number of representatives of the Steel and Iron Contractors Association and the Union.

(c)  Pursuant to the Pension Protection Act of 2006, the parties have adopted the Default Schedule of the Rehabilitation Plan published by the Board of Trustees of the Iron Workers Local 17 Pension Fund on August 15, 2008. The benefit changes apply to Participants retiring or terminating employment on or after May 1, 2009, unless otherwise stated below. The changes are as follows.

1. Unreduced Service Pension Benefit eligibility has been revised by adding an age 62 requirement with 30 years of Vesting or Benefit

19

Service, and eliminating the requirement of 30 years of continuous membership.

2. Unreduced Early Retirement Benefit payable at age 62 has been eliminated. Reduced Early Retirement Benefit eligibility has been revised by increasing the age requirement to 58. Reduced Early Retirement Benefit for Participants retiring between age 62 and age 65 are reduced by 3% for each year prior to age 65. Reduced Early Retirement Benefit for Participants retiring between age 58 and age 62 are reduced by actuarially equivalent reduction factors for each year prior to age 62, plus 3% for each year between age 62 and age 65. Participants retiring after age 62 are no longer eligible for a Postponed Retirement Increase of 3% per year.

3. The Occupational Disability Pension has been eliminated. The Toal and Permanent Disability Pension remains unchanged, except that retroactive disability payments for Participants who fail to timely file applications are eliminated.

4. The Pre-Retirement Death Benefit ("Return of Contribution Death Benefit") is eliminated effective August 15, 2008. However, for any unmarried participant who dies on or after August 15, 2008, a surviving non-spouse beneficiaries is eligible to receive a Pre-Retirement Survivor Annuity.

5. The Five Year Certain Guarantee form of benefit is eliminated. The normal form of benefit is now a Joint and 50% Survivor Annuity for married Participants and a Single Life Annuity for single Participants.

6. The Lump Sum Payment form of benefit is eliminated effective August 15, 2008.

7. A Qualified Joint and 75% Survivor Annuity has been added for married Participants.

8. The Pension Credit Hours Bank restoration rule adopted within 60 months prior to May 1, 2008 has been eliminated so that Participants are only entitled to the maximum number of hours in their Hours Bank at the time of retirement.

20

(d) The amounts required to be paid as "Insurance Wage" shall be paid to the Insurance Fund which shall be administered pursuant to the Agreement and Declaration of Trust dated as of October 1, 1975, which shall conform to all requirements of law and which, together with any amendments thereto, shall be considered as part of this Agreement as though set forth herein. The Agreement and Declaration of Trust shall be administered jointly by an equal number of representatives of the Employers and the Union. The payments of the Employers to the Insurance Fund shall be used exclusively:

1. To provide group life insurance, accidental death and dismemberment insurance, hospital expense insurance, surgical expense insurance, medical expense insurance, other health programs, and temporary disability benefits to eligible Iron Workers and their families in such form and amount as the Trustees of the Insurance Fund may determine; and

2. Payment of administration expenses of the Insurance Fund.

(e) The amounts required to be paid as "Annuity Wage" shall be paid to the Annuity Fund which shall conform to all requirements of law and which together with any amendments thereto, shall be considered as part of this Agreement as though set forth herein. The Agreement and Declaration of Trust shall be administered jointly by an equal number of representatives of the Employers and the Union. The payments to the Annuity Fund shall be used exclusively as a savings and annuity plan for the exclusive use of members of the International working within the jurisdictional boundaries of the Union.

(f) 1) Effective April 1, 2000, a Union working assessment check-off of four and on half percent (4.5%) of gross pay paid to each Iron Worker covered by this Agreement shall be maintained through the medium of payroll deduction from the Iron Worker's hourly rate.

2) A signed authorization card shall be provided for this deduction by the Union. Deposits for this deduction must be made on or before the fifteenth (15) day of the month following the month worked.

21

(g)  Payments by the Employers to the Iron Workers Fringe Benefits Funds, Inc., which cover all Employer contributions and withheld assessments as outlined in the previous Articles shall be paid on the fifteenth (15) day after the end of the month in which the work is performed and if not paid on or before such date, the Employer shall be considered delinquent. If the payments and monthly report are not received by the last day of the month following the month in which the hours were worked, the delinquent Employer will be subject to and agrees to pay a delinquency assessment of ten percent (10%) of the amount due plus one percent (1%) for each month the Employer remains delinquent, to cover the additional cost and expense of administration during the period of delinquency. Whenever any Employer is delinquent, the Union may (a) require such Employer to post a larger bond (reasonably calculated to provide for the wages and fringe contributions and deductions called for by this Agreement, based on the number of employees and hours of work for the Employer) and/ or (b) require the Employer to pay its contributions and deductions payable by the terms of this Agreement under the provisions of any of the Agreements and Declarations of Trust of the Fringe Benefit Funds either in cash or by cashier's check, certified check or money order on a weekly basis. If any Employer remains delinquent for more than two weeks, then the Union may remove Iron Workers from the employ of such delinquent Employer, and such removal shall not be considered as a violation of this Agreement. In addition the Trustees of the various Fringe Benefit Funds may take whatever action they deem necessary to collect said delinquent accounts.

(h)  The Employer agrees to permit an audit or examination of his financial records and books by the Trustees of the various Funds, including, but not limited to, the Plan Administrator and /or Plan Payroll Auditor or their agents, as the Trustees of said Fringe Funds may from time to time authorize. If as a result of said audit or examination a substantial deficiency in payments to the Fringe Funds is discovered, the Trustees of said Fringe Funds may assess the cost of said audit or examination to the Employer, and said cost shall be collectible as any other amount due from the Employer to said Fringe Funds. In addition to assessing the cost of audits or examinations to the Employer, the Trustees of said Fringe Funds may assess reasonable attorney's fees

22

and costs of any legal actions undertaken by the Trustees to collect the deficient payments and said reasonable attorney's fees and costs shall be collectible as any other amount due from the Employer to the Fringe Funds.

(i)   The employer hereby adopts and agrees to be bound by all the terms and provisions of the trust Agreements as well as any rules and regulations established thereunder by the Trustees for Funds covered by this agreement and as the same are amended from time to time as if the Employer was party thereto. The employer further agrees to be bound by the rules and procedure for the collection of contributions as they are established or as they will be amended from time to time by the Trustees of such Funds; including, but not limited to, provisions relating to Employer liability for interest charges as set by Trustees, attorney fees and audit fees.

(j)   In the event a State or National Health Insurance Law becomes effective under which the parties to this Agreement are required or choose to participate, the Parties agree to meet and discuss appropriate courses of action regarding continuation of all, none, or part of the then existing Iron Workers' Local No. 17 Insurance Benefits Plan. In such discussion, the Parties shall consider the benefits provided under the existing plan, the costs thereof; the benefits of the State and Federal Insurance Program and the cost thereof; the methods of financing such State or Federal Program including Employer payments, Iron Worker payments, taxes, and various combinations thereof.

### ARTICLE XVIII
### IRONWORKER MANAGEMENT PROGRESSIVE ACTION
### COOPERATIVE TRUST
### (IMPACT)

(a) There is hereby established an Ironworker Management Progressive Action Cooperative Trust. Effective August 1, 2006. Employers subject to the terms of this agreement who employ Iron Workers within the territory covered by this agreement shall abide by all terms and conditions of the Ironworker Management Progressive Action Cooperative Trust as follows:

23

(b) A Declaration of Trust shall be prepared by IMPACT and copies shall be available for inspection by the parties or other interested persons at the Iron Workers Local Union No. 17 office. Said Trust shall be deemed part of this agreement.

(c) The general purposes of the Trust to include but not limited to the improvement and development of the ironworker industry through education, training, communication, cooperation and governmental lobbying and legislative initiatives.

(d) The Trust is intended as a labor-management committee within the meaning of Section 302 (c)(9) of the Labor Management Relations ("Taft-Hartley") Act so as to permit Employer Contributions. It is further intended that the Trust Qualifies as a tax exempt Trust under section 501 (c) (5) of the Internal Revenue Code and other applicable tax laws.

(e) The IMPACT contribution shall be in lieu of any and all contractual requirements for contributions to the National Ironworkers and Employers Apprenticeship Training and Journeyman Upgrade Fund and the Institute of the Ironworking Industry. In addition, the Union and Employer agree by making contributions to IMPACT each of them shall become bound to IMPACT's Drug and Alcohol Screening Policy and Procedure or equivalent program and any amendments or modifications thereto.

### ARTICLE XIX
### BONDING REQUIREMENTS

(a) Each Employer of five (5) or fewer Iron Workers shall be required to post with the Union a bond of Twenty-Five Thousand Dollars ($25,000.00).

(b) Each Employer of six (6) to Fifteen (15) Iron Workers shall be required to post with the Union a bond of Fifty Thousand Dollars ($50,000.00).

(c)  Each Employer of sixteen (16) or more Iron Workers shall be required to provide the Union with an appropriate bond, to secure the same items and matters and which bond shall in no event be less than One Hundred Thousand Dollars ($100,000.00).

1.  The said bond shall be filed with the Union no later than two days before the start of any job. If said bond is not so filed, the Union may remove Iron Workers from the employ of the Employer and such removal shall not be considered as a violation of the Agreement.

2.  On jobs of five (5) days' duration or less, the Union representative will have the right to waive the bonding provisions of this Agreement.

3.  Should an Employer fail to post bond as provided herein, said Employers shall make weekly payments of wages and fringe benefits.

4.  The Union will file a current list of bonded Employers with the Construction Employers Association and update it quarterly.

(d)  On an annual basis during the first quarter of the calendar year, the parties shall jointly request copies of each Employer's bond, which each Employer must provide to the Union and Association within thirty (30) days of the written request. Employers who fail to provide copies of an adequate bond on a timely basis shall be deemed without a bond and in violation of Article XIX and shall be subject to an expedited grievance procedure, brought by the union and/or a joint labor management committee comprised of at least one representative of the Association and the Union. Any Employers without a proper bond on file shall be given thirty (30) calendar days to remit said bond to the Union office and Association. Any Employer who fails to do so must provide the Union an executed copy of the Assignment and Joint Check Agreement for Payment of Fringe Benefit Contributions ("Joint Check Agreement"). Employers contracting with the unbonded Employer shall honor said Joint Check Agreement.

## ARTICLE XX
## FOREMEN

(a)   There shall be no restriction as to the employment of foremen or pushers. The Employer may employ on one piece of work as many foremen or pushers as in its judgment is necessary for the safe, expeditious and economical handling of the same. Foremen shall not carry or work continuously with the tools after there are seven (7) or more Iron Workers in a gang.

(b)   When one Iron Worker is employed and is required to read working detailed drawings, he/she shall be paid foreman's rate; and when two Iron Workers are required, one shall be a foreman.

(c)   When there is more than one foreman, at no time will out-of-town supervision exceed Local 17 supervision in numbers.

## ARTICLE XXI
## WELDERS AND HIGH TENSION BOLTS

(a)   Each welder will be provided with a journeyman Iron Worker who shall assist the welder, to help on the fittings, look out for his/her safety and do any other work pertaining to the general scope of the welding operation. In situations where the welding does not require the number of assistants as indicated above, an agreement will be reached between the Union's Business Agent and the superintendent to make adjustment accordingly, fully recognizing that many jobs do not require any additional help to the welder, or require help to a much lesser degree.

(b)   When high tensile bolts are used, one Iron Worker shall stick the bolts and two Iron Workers shall constitute a crew for impacting. When two or more crews are employed, one Iron Worker shall be paid a foreman's rate. In situations where mechanical fasteners do not require the number of Iron Workers as indicated above, an agreement will be reached between the Union's Business Agents and Management to make adjustments accordingly, fully recognizing that many jobs require help to a much lesser degree.

## ARTICLE XXII
## IRON WORKER TOOLS

(a)  Iron Workers shall furnish for their own use all necessary hand tools to enable them to effectively carry out the job. Tools broken on the job shall be replaced with in kind replacements by the Employer, such as drills, taps, hackblades, etc. No Iron Worker shall be held responsible for the loss of tools or equipment in his/her charge.

(b)  In case of fire on a job at any time, the Employer shall be held responsible for mechanic's loss of clothing or tools. Reasonable proof of loss shall be provided. The Employer shall also be responsible for loss of tools due to theft if same occurs as a result of forcible entry during non-working hours. Tools must be registered with the Employer. The amount of loss due to fire or theft shall not exceed three-hundred dollars ($300.00) for each individual's loss.

(c)  When tools are to be checked out or in, it shall be done during working hours.

## ARTICLE XXIII
## DRINKING WATER-CLOTHES ROOM

The Employer shall furnish suitable drinking water at all times and clean suitable shelter in which the Iron Workers may eat lunch and keep their clothes. Such shelter shall be heated in cold weather.

## ARTICLE XXIV
## COMPENSATION INSURANCE

The Employer must at all times provide Workers' Compensation Insurance and post in a conspicuous place evidence of compliance.

## ARTICLE XXV
## APPRENTICESHIP

(a)  The Parties signatory hereto agree to the establishment of a Joint Apprenticeship Committee in accordance with the provisions of the

"Iron Workers Apprenticeship and Training Standards," as contained in Article XXIII of the International Constitution. Said Committee shall formulate and operate an Apprenticeship Program in the local area in conformity with said Standards.

(b) On structural work one (1) apprentice may be employed to every four (4) journeymen. On rod work one (1) apprentice may be employed to every three (3) journeyman. On all finishing, steel sash, stairway and ornamental work, one apprentice may be employed for every two (2) journeymen. One (1) apprentice may be employed for every sheeting gang. On roadway signage and sound barriers, the ratio of apprentices to journeyman shall be two (2) apprentices to one (1) journeyman. Unloading and erection of light gauge metal trusses, two (2) apprentices for every two (2) journeyman. On pre-engineered metal buildings apprentice ratio may be as referenced in Article I section (o).

(c) During each of the periods herein set forth, apprentices shall be paid as follows: (it being understood that this rate shall apply to new apprentices indentured after the date of the signing of this Agreement:)

| | |
|---|---|
| First Year | 50% of journeyman's rate |
| First Year | 55% of journeyman's rate at 6 months |
| Second Year | 70% of journeyman's rate |
| Second Year | 75% of journeyman's rate at 6 months |
| Third Year | 80% of journeyman's rate |
| Third Year | 85% of journeyman's rate at 6 months |
| Fourth Year | 90% of journeyman's rate |
| Fourth Year | 95% of journeyman's rate at 6 months |

(d) LOCAL APPRENTICESHIP FUND; There is hereby established a "Joint Iron Worker Apprenticeship Trust Fund" and each Employer within the jurisdiction of the Union shall pay into such Fund the amount of forty-eight cents ($.48) per hour for each hour paid. It is understood that the payments into this Fund shall be used for the purposes set forth in the Trust Agreement executed by the Parties hereto, including, but not limited to, the employment of an Apprenticeship Coordinator. It is further understood that this forty-eight cents ($.48) per hour contribution shall be reported by Employers in conjunction with the

Health and Welfare contributions heretofore referred to. Payments into this Fund shall commence January 1, 2002, and thereafter.

(e) Provided Iron Worker Apprentices are indentured and available, Employers shall employ an apprentice on structural, reinforcing, and rigging work when his/her Iron Worker work force exceeds applicable numbers as outlined in section "b" above. With larger Iron Worker journeymen work forces, the Employer shall employ a number of additional indentured and available apprentices; such number to be developed by considering the size of the Employer's journeyman work force, the number of Iron Workers working in the Union and the number of registered apprentices. On all finishing, steel sash, stairway and ornamental work, one (1) apprentice shall be employed for every two (2) journeymen or on the same basis as above. One (1) apprentice shall be employed for every sheeting gang or as provided above.

## ARTICLE XXVI
## JURISDICTIONAL DISPUTES

(a) The provisions of this section are subject to Article I, "Craft Jurisdiction," Section (a).

(b) It is expressly understood that working rules, bylaws, conditions, practices or customs unless same are specifically mentioned in this Agreement, shall not be interpreted as being part hereof.

(c) It is further understood that the provisions of this section of Agreement shall govern the employment of and the conditions under which Iron Workers shall work in Cuyahoga, Ashtabula, Erie, Geauga, Huron, Lake, Medina, Portage, Summit and Lorain counties.

## ARTICLE XXVII
## SETTLEMENT OF DISPUTES

(a) Except as otherwise provided in subsection (b) of this Article, all disputes arising under the Agreement shall be resolved as follows. There shall be a Joint Grievance Committee consisting of three (3) representatives of the Employer and three (3) representatives of the

Union. Should any dispute or disagreement arise between the Parties hereto under the operations of this Agreement, it shall be reported in writing to the Chairman or Secretary of such Committee (or to the Executive Vice-President of the Construction Employers Association, if a Chairman or Secretary has not been selected, who shall notify the Parties hereto to select members to serve as a Joint Grievance Committee).

A meeting of the Joint Grievance Committee shall be convened within seventy-two (72) hours, to consider the grievance/dispute. All matters coming before the Committee shall be decided by a majority vote Four (4) members of the committee, two (2) from each of the Parties hereto, shall be a quorum for the transaction of business, but each Party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting. The Joint Grievance Committee has the right to assess financial and/or other specific remedies for those who violate the Collective Bargaining Agreement. The decision of the Joint Grievance Committee shall be final and binding upon all parties. Pending the conclusion of the Joint Grievance Committee there shall be no stoppage of work.

If the vote of the Committee results in deadlock, so that a definite settlement of the dispute cannot be reached, the dispute shall be submitted to a Board of Umpires, comprised of one (1) representative selected by the Employer and one (1) representative selected by the Union, and a third member to be selected by the two (2) thus chosen, for decision by such Board of Umpires by a majority vote. In the event that these two (2) members cannot agree upon a third member of the Board of Umpires within three (3) days after their appointment, he/she shall be selected in accordance with the rules of the Federal Mediation and Conciliation Service. The cost of such arbitration shall be borne equally by both Parties to the arbitration. All decisions arrived at by majority vote, as provided for in this Article, shall be binding upon the Parties.

(b) If an Employer party to this Agreement should fail to make timely payments of any amounts incurred by operation of Article XVII of this Agreement (Wages Designated for Pension, Insurance, Annuity and Assessment Check-off), the respective Trust Fund shall have the option to submit such delinquency for binding arbitration as provided

30

for in subsection (a), or to elect instead to file a lawsuit to collect such delinquency, without any need to resort to arbitration. The Fund Administrator is required to notify both the Union and Construction Employers Association before legal action is taken.

## ARTICLE XXVIII
## STRIKES AND LOCKOUTS

(a) It is mutually agreed that there shall be no strikes authorized by the Union or no lockouts authorized by the Employer except for the refusal of either party to submit to the Joint Grievance Committee, in accordance with Article XXV, failure on the part of either Party to carry out the award of the Joint Grievance Committee or Board of Umpires, or as otherwise provided in this Agreement.

(b) Every facility of each of the Parties hereto is hereby pledged to immediately overcome any such situation; provided, however, it shall not be a violation of any provisions of this Agreement for any Iron Worker covered by this Agreement to refuse to cross or work behind the picket line of any affiliated union which has been authorized by the International of that union or the Building and Construction Trades Council.

## ARTICLE XXIX
## SUBCONTRACTING

1. The Employer agrees that he will not subcontract jobsite work covered by this Agreement which is to be performed at time when employees of the Employer are working at such site under the terms of this Agreement to any Employer which does not have, at the time the work is to be performed, a collective bargaining relationship with a building trades union covering such work, whose members receive the prevailing wage rates.

2. The Employer agrees that any portion of the work covered by this contract to be done at a jobsite shall be done either by its own forces in accordance with the terms of this Agreement, or by subcontractors who have signed agreements with the Union.

31

3.  The provisions of this Section are enforceable only through the arbitration procedure and/or legal action, and this Section shall in no way be construed to permit any form of threats, coercion, restraint or force.

### ARTICLE XXX
### CONSTRUCTION INDUSTRY SERVICE PROGRAM

(a)  Employers subject to the terms of this Agreement who employ Iron Workers within the territory covered by this Agreement shall abide by all terms and conditions of the Construction Industry Service Program as follows:

(b)  A Declaration of Trust shall be prepared by the Construction Employers Association and copies shall be available for inspection by the Parties or other interested persons at the office of the Construction Employers Association. Said Trust shall be deemed a part of this Agreement.

(c)  Each Employer covered by this Agreement shall pay said Trust thirteen cents ($.13) for each hour paid by the Employer to each Iron Worker covered by this Agreement.

(d)  The purpose of the Trust shall be to promote the common good of the construction industry in the Greater Cleveland area by providing financial support for various activities such as:

   1)  Payment of management's cost in connection with joint apprenticeship programs in the construction industry.

   2)  Payment of management's expenses in creating, operating and maintaining additional educational and training facilities for the benefit of the construction industry and its employees.

   3)  Payment of management's expenses for the improvement of safety practices in the construction industry in the Greater Cleveland area.

32

4) Payment of management's expenses in connection with the administration of activities jointly administered with unions in the construction industry in the Greater Cleveland area. (The Industry Service Program is not a program jointly administered with the unions in the construction industry.)

5) Payment of management's expenses in connection with the establishment of a public relations program for the benefit of the construction industry in the Greater Cleveland area.

6) Payment of management's expenses in connection with the collection and distribution of wage and related data to all segments of the construction industry in the Greater Cleveland area to insure conformity by all Employers with the terms and conditions of such wage agreements.

7) Payment of management's expenses for the maintenance of the office facilities and personnel engaged in the activities of the Construction Industry Service Program.

(e) It is agreed by the Employer that the Construction Industry Service Program Trust Fund shall not be used for lobbying in support of anti-labor legislation of any kind at municipal, state or national levels or to subsidize any contractors or contractor association in connection with any work stoppage or strike.

(f) The Trustees of said Program shall comply with all present and future federal laws governing the same.

(g) Payments shall be in accordance with such instructions and on such forms as are furnished by the Trustees Delinquent contributions shall be subject to such penalties as the Trustees may prescribe from time to time.

(h) The Union shall have no participation or control of any kind or degree whatsoever nor shall the Union be connected in any way whatsoever with the Construction Industry Service Program.

33

## ARTICLE XXXI
## SCOPE OF AGREEMENT

This Agreement contains all of the provisions agreed upon by the Employer and the Union. Neither the Employer nor the Union will be bound by rules, regulations, or agreements not herein contained except interpretations or decisions issued pursuant to the provisions of Article XXV Settlement of Disputes

## ARTICLE XXXII
## HEALTH AND SAFETY RESPONSIBILITY

It is agreed that the Employer is responsible for and has the authority to ensure health and safety at the work place in accordance with this Agreement and all applicable state and federal laws and regulations.

It is specifically agreed that nothing stated in this Agreement or in the General Working Rules set out by the International is meant to shift any of the Employer's traditional responsibility for job safety over to the Union or its agents. It is specifically understood that the Employer has exclusive responsibility for health and safety at the work place and any language set out in this Agreement which speaks to the Union's right to communicate with the Employer over issues, shall not be interpreted to hold the Union or its agents responsible for health and safety matters. The Employer is solely and completely vested with its traditional responsibility in this respect.

(a) In accordance with OSHA (29 CFR 1926/1910) requiring safety training and education, the Union shall provide to each Iron Worker an Outreach Safety Training Program certified by the U.S. Department of Labor.

(b) Additional safety and education training as required by the Employer shall be made available to the Ironworker. This training will be at no cost to the Iron Worker and no wages and/or fringes will be paid by the Employer.

(c) The Employer shall assure that each Iron Worker has been provided training per OSHA 1926.753 under the new SENRAC standards when implementing a multiple lift rigging assembly.

## ARTICLE XXXIII
## JOINT COMMITTEE

(a) A Joint Committee will be formed to meet on a regular basis to discuss, review, and deal with problems involving the current Agreement.

(b) The Joint Committee will meet on the third Wednesday of the months of June and December at noon.

## ARTICLE XXXIV
## SAVING CLAUSE

Should any part of or any provisions herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement, shall not invalidate the remaining portions thereof; provided, however, upon such invalidation the Parties signatory hereto agree to immediately meet to renegotiate such parts or provisions affected. The remaining parts or provisions shall remain in full force and effect.

## ARTICLE XXXV
## FAVORED NATION CLAUSE

If the Union shall furnish Iron Workers to any Employer within the area of jurisdiction of this Agreement upon any more favorable wage rates and conditions than those contained herein, the Union agrees that such more favorable wage rates and conditions other than those contained in a market retention agreement shall automatically be extended to the Employer Special local, area or national agreements negotiated to cover specific projects or classes of work shall be excluded from operation of this provision.

## ARTICLE XXXVI
## DURATION AND TERMINATION

The term of Agreement shall be; five (5) years.

1.    The working conditions to remain as per this Agreement between the Union and the Steel and Iron Contractors Association and the Construction Employers Association of Cleveland, for five (5) years; May 1, 2013 - April 30, 2018. Unless written notice be given by either party to the other at least four (4) months prior to such date or a desire for change therein or to terminate the same, it shall continue in effect for an additional year thereafter. In the same manner, this Agreement, with any amendments thereof, shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing by either party to the other at least four (4) months prior to the expiration of such contract year. Any such notices as hereinabove provided for in this Article, whether specifying a desire to terminate or to change at the end of the current contract year shall have the effect of terminating this Agreement at this time.

IN WITNESS WHEREOF, we the undersigned, the STEEL AND IRON CONTRACTORS ASSOCIATION, CONSTRUCTION EMPLOYERS ASSOCIATION OF CLEVELAND, and the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL and REINFORCING IRON WORKERS UNION LOCAL NO. 17, hereunto affix our hands as such representatives for and on behalf of such associations and the Union, its officers and agents, at Cleveland, Ohio, as of the 1st day of May 2013.

For the Union:
    Timothy McCarthy (Chair)
    Rich Jordan
    Dan Beckett
    James Cusick
    William Meaden
    Dan Munnings
    Scott Munnings
    Bruce Hensley
    John Reese
    Scott Cooper
    Randy Aughenbaugh
    Gary Huhn, Jr.

For The Employer:
    Chuck Fisher
    Jim Mirgliotta
    Bob Hurley
    Keith LePage
    Tim Linville

IRONWORKERS UNION LOCAL NO. 17
BOUNDARY LINES

## CLEVELAND LOCAL NO. 17 WITH: TOLEDO, OHIO
## LOCAL NO. 55

WEST BOUNDARY LINE: Sandusky, Ohio

Columbus Avenue north to Sandusky Bay (and/or Lake Erie); Columbus Avenue south to present Route 4; Route 4 south to present Route 99; from Route 99 south to old Route 224 - all territory to the west of the boundary line is to be within the jurisdiction of Local Union No.55, Toledo, Ohio.

All territory to the east of the boundary line is to be within the jurisdiction of Local Union No. 17, Cleveland, Ohio.

Kelly's Island is to be within the jurisdiction of Local Union No. 17, Cleveland, Ohio.

All bridges, tunnels, viaducts, etc., relative to these boundary lines shall be under the jurisdiction of Local Union No. 17, Cleveland, Ohio.

## CLEVELAND LOCAL NO. 17 WITH: PITTSBURG, PENNSYLVANIA
## LOCAL NO. 3

EAST BOUNDARY LINE:    Ashtabula, Ohio

For the purpose of determining State Prevailing Wage Rates and Federal Davis-Bacon Wage Rates in Ashtabula County in Ohio, the wage and benefit package of Local Union No. 17 shall prevail.

All territory from the Geauga County Line on the West boundary North of State Route 6 and West of State Route 11 and North of Interstate Route 90 to the Pennsylvania Line on the East boundary shall fall under the jurisdiction of Local Union No. 17, Cleveland, Ohio.

## CLEVELAND LOCAL UNION NO. 17 WITH: CANTON, OHIO
## LOCAL NO. 550

SOUTH BOUNDARY LINE: Canton, Ohio
All territory north of old Route 224 line to be within the jurisdiction

of Local Union No. 17, Cleveland, Ohio.

All bridges, tunnels, viaducts, signs, etc., relative to old Route 224 line to be within the jurisdiction of Local Union No. 17, Cleveland, Ohio,

All territory south of old Route 224 line is to be within the jurisdiction of Local Union No. 550, Canton, Ohio, except for everything within the city limits of Barberton, Ohio, which shall be under the jurisdiction of Local Union No. 17, Cleveland, Ohio.

### READING FROM LEFT TO RIGHT, OR WEST TO EAST:

Route old 224 line: Greenwich Avenue - Wooster Road or East Avenue.
Route old 224 line: New 224 line including Cloverleaf.
East Waterloo Road: New 224 line - Attwood Road - Old Route 224.
This will be considered to be the old Route 224 line, except for everything within the city limits of Barberton, Ohio, which shall be under the jurisdiction of Local Union No.17, Cleveland, Ohio.

### CLEVELAND LOCAL NO. 17 WITH: YOUNGSTOWN, OHIO LOCAL NO. 207

### SOUTHEAST BOUNDARY:

West of a line from Middlefield to Shalersville to Deerfield, shall be under the jurisdiction of Local Union No. 17, Cleveland, Ohio.

East of a line from Middlefield, to Shalersville to Deerfield, shall be under the jurisdiction of Local Union No. 207, Youngstown, Ohio.

Local Union No. 17, Cleveland, Ohio and Local Union No. 207, Youngstown, Ohio has agreed that the Ohio County of Ashtabula, shall be as follows:

Ashtabula County in Ohio-All territory from the Portage County Line on the West boundary South of State Route 6 and East of State Route 11 and South of Interstate Route 90 to the Pennsylvania Line on the East boundary shall fall under the jurisdiction of Local Union 207, Youngstown, Ohio.

Everything south, starting at the Geauga County line, shall be under the jurisdiction of Local Union No. 207, Youngstown, Ohio.

CLEVELAND LOCAL NO. 17 WITH: LOCAL NO._____

NORTH BOUNDARY:

The east boundary line and the west boundary line continuing
north half-way across Lake Erie.

### STEEL AND IRON CONTRACTORS ASSOCIATION
Construction Center
950 Keynote Circle, Suite 10
Cleveland, Ohio 44131-1802

(216) 398-9860

Chuck Fisher
President, S & I.C.A.

### STEEL AND IRON CONTRACTORS ASSOCIATION MEMBERS

A. E. Steel Erectors, Inc.
Forest City Erectors, Inc.
Industrial First, Inc.
Kelley Steel Erectors, Inc.
Norris Brothers Co., Inc.
Olmsted Falls Erecting Co., Inc.
The Ruhlin Company
R.G. Smith Company, Inc.
Standard Contracting & Engineering, Inc.y
Tesar Industrial Contractors, Inc.
Whitacre Engineering Co.

**CONSTRUCTION EMPLOYERS ASSOCIATION**
Construction Center
950 Keynote Circle, Suite 10
Cleveland, Ohio 44131-1802

(216) 398-9860

Tim Linville
Executive Vice-President

**STEEL AND IRON CONTRACTORS**
**NEGOTIATING COMMITTEE**

Chuck Fisher, Chairman
Robert Hurley
Jim Mirgliotta
Mark Laskey
Keith LePage
Tim Linville

**ASSIGNMENT OF BARGAINING RIGHTS CEA MEMBERS**

21st Century
A.E. Steel Erectors
BMI Refractory
Carroll Glass
Forest City Erectors
Industrial First
Kelley Steel Erectors, Inc.
Norris Brothers
North Coast Concrete
Olmsted Falls Erecting
Platform Cement
Precast Services
Pro Construction
R.G. Smith Company
Ruhlin Co.
Standard Contracting

41

## ASSIGNMENT OF BARGAINING RIGHTS TO
## STEEL AND IRON CONTRACTORS ASSOCIATION
## NON-CEA MEMBERS

Akron Erectors, Inc.
Architectural Products Sales Company
B Steel Erectors, Inc.
Chemsteel Construction Company
Crystal Clear Architectural Metal
Jaam Concrete Construction, Inc.
Kokosing Construction
Mid State Restoration, Inc.
On Site Studwelding, Inc.
PM Construction & Engineering, Inc.
Sun Erecting, Inc.

## MEMORANDUM OF UNDERSTANDING
## ALTERNATIVE DISPUTE RESOLUTION

1.    Whereas Alternative Dispute Resolution (ADR) programs have effectively been developed and adopted by numerous labor unions and their respective contractor associations throughout the United States; and

Whereas the successful implementation of these programs have benefited both labor and management;

Now therefore let it be resolved that if during the term of this Agreement, the Ohio Revised Code authorizes ADR programs in the Ohio Workers' Compensation laws, the parties agree to meet and negotiate in good faith a program consistent with the legislation.

2.    Should the Pension Protection Act of 2006 (PPA) be amended during the term of this agreement, the Parties agree to meet and negotiate in good faith a program consistent with said amendments.

# IRON WORKERS'
## LOCAL UNION NO. 17

1544 East 23rd Street
Cleveland, OH 44114

Telephone Numbers: (216) 771-5558-59-60-61-93
Akron Office: (330) 535-6913
Toll Free Number: 1-800-774-5558
Fax Number: (216) 771-8242

| TITLE | NAME |
|---|---|
| FIN.SEC/TREAS/BUS MGR | TIMOTHY MCCARTHY |
| PRESIDENT | JIM CUSICK |
| VICE PRESIDENT | DAN MUNNINGS |
| RECORDING SECRETARY | BRIAN MURRAY |
| BUSINESS AGENT WEST | SCOTT MUNNINGS |
| BUSINESS AGENT EAST | DAN BECKETT |
| BUSINESS AGENT AKRON | RICH JORDAN |
| EXECUTIVE BOARD | JON ROTHKEGEL |
| EXECUTIVE BOARD | JOSH REESE |
| EXECUTIVE BOARD | GARY HUHN JR. |
| EXECUTIVE BOARD | TERRY TRIGALET |
| EXECUTIVE BOARD | RANDY AUGHENBAUGH |
| EXAM BOARD | BOB TOOLIS |
| EXAM BOARD | DAN MCDONALD |
| EXAM BOARD | MICHAEL BOLES |
| TRUSTEE | BETHANY LAPP |
| TRUSTEE | ALEX DAVIS JR. |
| TRUSTEE | PAT MCTAGGART |
| CONDUCTOR | ELI KARIM |
| SERGEANT-AT-ARMS | OLEN STEELMAN |

